Thank you. May it please the court. My name is Peter Goldberger. It's my privilege to represent Anthony Rowe, who was the defendant below, is the appellant here, and I'd like to reserve three minutes for rebuttal. Thank you. We have an interesting case, but it's not 30 years old and not that complicated. Mr. Rowe was convicted after trial on one count, a one count indictment. That count charged two theories of a violation of Section 841A, the principal federal drug statute, distribution of heroin and possession of heroin with intent to distribute, both alleged to be involving a thousand grams or more of heroin. So and that quantity allegation would trigger supposedly a 10 year mandatory minimum for the case. It seems unrelated, but it's not. Do you know what the statute of limitations is under 841A? Five years. Okay. So at sentencing, the court accepted the pre-sentence report and the government's assertion that there were more than 10 kilograms involved, 10 times the minimum for the to trigger the subsection A sentencing category with a guidelines offense level of 34. And the judge did then impose on that basis a sentence of 151 months. The defense argued that the relevant quantity for sentencing was between one and three kilograms, which would trigger an offense level of 30 and a sentence that might be below 10 years, which is why that's the interaction of the mandatory and the guidelines in the case. So our appeal raised three issues, and we're probably going to, given the time, rest on the brief with respect to the second issue, the prosecutor's closing argument. I'm certainly prepared for questions on that. And I think I have only a little to say about the third issue, which is the scope of proceedings on remand where the government's conceded error at the sentencing. It seems from Chief Judge Smith's nodding that I may have correctly guessed what interested you for oral argument purposes. I think you have very accurately predicted what the panel's interested in hearing. Yeah. And I think it's fair to say this appeal presents a fundamental and recurring issue of statutory construction under 841. When does a single violation of the statute involve a thousand grams within the meaning of that provision? That in a very general sense is recurring, I would agree. But what strikes me and what's been interesting about this case is that I don't think I've ever seen the issue raised the way you have raised it. And I was going to say, it's surprising. This statute has been on the books for almost 50 years. The mandatory minimums have made this a compelling and important issue in my mind for 20 years. I have seen indictments of this kind for the last 20 years out of the middle district. I have objected to them, but only in a 2255 context where the issue wasn't teed up properly. This may be the first case where trial counsel raised the issue on post-trial motions, but raised the issue properly. It was addressed by the trial court before sentencing. And we have an opportunity, and I'm asking you to please address it as a precedential opinion. You have a heavy burden because the challenge goes to the sufficiency of the evidence. Well, the challenge plays out in multiple ways. It's the sufficiency of the evidence for the highest level of offense. It's the duplicity of the indictment, which became apparent only when the government's theory of the case, now conceded to be erroneous theory of the case, was made explicit at trial. And it was then reflected as an error in the jury instructions. So it pervades the trial. There was no objection. There was no timely objection to the jury instructions. And I have addressed how the remedy should play out under a plain error rubric in the brief. What is the largest single distribution, single defined in your life? I need to define it. The largest single distribution. 196 grams, I think. The final one when he was arrested. Assuming a scenario because some of these sales were with the drugs being fronted. If we have a serious situation where the drugs are fronted and the person who's selling them is not be paid for, say, another three to four weeks. In that situation, is the possession with intent or would the, forget possession with intent, would the distribution there be a continuing offense? No. Your submission. No, I think that the government agrees with me. The distribution is a momentary offense, not a continuing offense. It occurs when the drugs change hands. And if the amount of drugs that change hands at that moment from seller to buyer does not equal or exceed a thousand grams, just to use the example of heroin under A, you don't have an A-level violation. Do you agree that possession with intent to deliver is a continuing offense? Yes. And now we have a controversy about what the unit of prosecution is for that continuing offense. And I think that's the hardest question in the case. So our position, and this is a little different from what I said. I think it's fair to say what we said in the reply is a little different from what we said in the opening brief and what I'm about to say now may even be a little different from what we said in the reply because like my friend Mr. Cerruti, we keep thinking about this. It's such a hard problem. An A-level possession with intent to distribute, I am suggesting now, should be defined as possession of a thousand grams or more, in the case of heroin, a thousand grams or more of heroin as soon as the amount possessed reaches a thousand grams and until the amount no longer equals a thousand grams. So if it's held in a stash and some is sold, if there is less than a thousand left, that's the end of possession of a thousand. With the intent to distribute a thousand grams at one time, that's the only way to capture the highest-level dealer in the A category. I bet Mr. Cerruti doesn't agree with that last qualification. I know that he doesn't. I know he doesn't. But that's the way that makes the possession the anticipatory and lesser-included offense of the distribution of a thousand grams or more, which is the structure of the statute. So I think when you look at the statutory, well, let's start by saying the statutory language, a case involving a violence or a case of violation involving this amount, is completely ambiguous on the question presented. There is absolutely no clear meaning to the word involving. And it could be any of the meanings that people have talked about here. So how do you resolve that ambiguity? Statutory structure, statutory purpose. The canon of construction that when there is ambiguity in defining the unit of prosecution, the court must pick the one that favors the defendant and rule of lenity. And the four, all of those. Anything? I don't know if it's exact. It's a special application. You could say it's a special application of the rule of lenity, the canon from Universal CIT and whatever the other case from the 50s was that articulated it as a special rule about unit of prosecution. I think it's it does seem like it's a special application of lenity. All of those work to say, how do you put the the biggest cases? With the cutoff being what Congress meant, a thousand grams into Category A, and you don't hit people with a mandatory 10-year sentence that Congress thought didn't clearly think deserved it. And I'm concerned about aiders and abettors. I'm concerned about Pinkerton liability. So you can't just say, you know, well, if they possessed a thousand grams, that's a big dealer. Because look at the facts of the Martinez-Zayas case from 88 that we cited in reply. It's like the girlfriend of the drug dealer in whose house he hid the thousand grams. She's not the big dealer, you know, but she doesn't have the intent to distribute the thousand grams. And that it helps you distinguish the small dealer. I think we're also concerned that Congress did not mean to hit. And this is this is evident from the distribution point to Congress did not mean to hit the small dealer who doesn't get caught for a long time to aggregate the quantities. And that's sort of what happens when you deal with a thousand, someone that at some point has a thousand grams in storage from which to sell five grams at a time, 10 grams at a time and doesn't get caught for a year. But that might be the big deal. The problem is the guy who's actually selling to feed his own habit, who doesn't get caught for a year. And so that's exactly right. And so the most favorable interpretation is possession of a thousand with intent to distribute a thousand. If and I will concede that none of the cases say that. OK. Nor do they reject. But in this case, why isn't it reasonable that a jury could find based on all of the evidence that was presented, direct and circumstantial, including expert testimony, that there was a time in which your client possessed as much as a thousand a kilo or more. There is not there is no evidence of that. The evidence is that he traveled back and forth from Philadelphia. What about Pierce's testimony about what he observed? He never observed a large quantity. He observed bundles. He observed some bundles when he purchased. Right. The kilo is a brick. It's a large brick. He didn't he doesn't describe. What about the experts testimony? The experts said what the experts said in very vague terms is that selling 200 grams, which is a characterization of the last sale, right? Indicates the possibility of access to without two kilo quantities. Is access enough? Not if it's not you that possesses it. What if it's a supplier? What if it's in your girlfriend's girlfriend's apartment? Where you cohabitate with her or if you don't cohabitate with her, the dealer has constructive possession. There's also a unanimity issue there because you're not sure there was no interrogatory. You're not sure whether or not all 12 agreed to the same bundle, a kilo or whatever. And that's why we say the remedy has to be in trial, because there's a fundamental ambiguity. We do know, though, that the jury agreed with respect to the 100 grand conviction. That's true that we have a separate interrogatory. They're checked off. Yes. But you maintain we shouldn't even affirm. Well, I said that at least you would run. You said it. Or you didn't take it seriously. Like everything. It's so it makes my head hurt every time I think about that. I wanted to get that off the table. I know I'm very close to conceding that. All right. For that. But it's because of the duplicity and ambiguity of whether it was distribution or intent that the jury possession with intent that the jury found. And the distribution itself is completely flawed. And there is no fallback on the distribution. No verdict, I don't think could be mistaken. That's why I was not fully conceding. So. So if we agree with you on the sufficiency of the evidence argument on the kilogram. Yes. And if we accept that there was sufficient evidence for the 100 grams. We would be striking the finding as to the thousand grams. There would still be a conviction as to 100 grams. And there would still be a sentence in the sentencing. And then we would still have our sentencing. Sentencing, rehearing. Yes. And all of this, whatever it was, could be thrown into the relevant conduct question. If the government had proof of it. And if the government had proof, all of it could become. Yes. Relevant. Nothing that I've said about the unit prosecution affects a relevant conduct. So where does that put this case? What's the case? More importantly, where does it put your client? Yes. It puts the case where we on our third discussed on our third point. The government failed to advance evidence. I continue on this for a moment. Failed to present any evidence in the face of a valid objection to there being more than one kilo. So let me just make sure we're all on the same pages. The relevant the pertinent cutoffs for guideline purposes are different from what we've been talking about under the statute. For guideline purposes, it's one kilo or three kilos that trigger the 30 or the 34 level of the guidelines. The defense argued for level 30, saying that the evidence showed a little more than a kilo, not more than three. The government said there were 10 kilos, meaning more than three, and got that from the judge. But didn't the government got it to 34? Correct. By arguing that there was more than 10 kilos in the case. But never pointed to any evidence or information. Doesn't have to be admissible evidence to justify the more than three. And since that was over a valid objection, they had every opportunity to present the information at the time of sentencing. We argued under this court's Dickler case, as more recently enforced in cesspitas. They do not get on remand a chance to prove more than three. You don't give them an open ended remand to fix the error that they made, making it fruitless for a defendant to appeal. Right. That there being there are no special circumstances that justify allowing them to reopen the quantity question on remand. Of course, either party could present new evidence on any other matter at the resentencing. We'll have you back. Thank you very much. Thank you, Mr. Cerruti. Your Honors, may it please the court, Stephen Cerruti on behalf of the United States. And like my opposing counsel, this case has made my head hurt a little bit at times. That's not Mr. Goldberger's fault, I don't think. No, no. Let me start with a very basic but maybe stupid question for both. Why do you charge this way? Why were there were multiple transactions? Why does the U.S. Attorney's Office charge this way? It was certainly not a stupid question, Your Honor. I asked the same question myself to those involved. And I really have not received what I consider a good answer. I'm not surprised. This is certainly not the ideal way to do it. You can understand why a reviewing court or not necessarily reviewing court, certainly a district court, might look askance at this kind of charging conduct. It is troublesome. I don't mean necessarily in this case, but I mean, as a practice, we all know. For lack of a better term, the games that can be played for sentencing purposes. And it just, it has a bad appearance to it, especially when, as here, we can draw from this record and from the verdict, a discreet charge which led to a conviction. So you don't have an answer to my question. And I don't disagree. I think that this is certainly not a best practice. I guess my my position here would be that this is not a reversible practice. Would you convey back to my friend, the United States Attorney for the Middle District of Pennsylvania, that at least speaking only for myself, which was a term, as I recall, Judge Becker thought was not an appropriate way to phrase a particular point. But that I at least have some problems with this. I do, too. Make it a twofer. I'll make him listen to the trans or listen to the recording of this argument. So you can hear it in your own words as well. So what is it that you're conceding here in terms of the charging? Well, I think the two things that maybe you could say three at this point. First, obviously, the third issue, as far as the 10 kilogram amount, I, as I was reviewing the case, I couldn't come to that amount myself. And so we elected to concede that. To your credit. Thank you. Also, I think that the. Not from this circuit, but the precedent from other circuits, the circuits talking about the unit of prosecution for distribution, having to need single instances of individual distributions that would reach a thousand and not allowing the aggregation of small units like was was argued here. Frankly, I also don't think there's any problem with the circuits who have decided otherwise. So I think you could look at that as being concession as well. The district court certainly found that we're not arguing that here. I think the third kind of then to use Mr. Goldberger's language close to a concession would be on the first part of his his newly raised argument here today, which is that for possession with intent to distribute their need, there may need to be a single instance of an actual possession of the one thousand amount. So, again, we're not looking at aggregation and saying, well, you know, he possessed 200 grams on five different occasions. So therefore, we're going to aggregate that together based on Mr. Goldberger's argument. I do, as Joe Fisher expected, disagree with the idea that also wrapped up in possession with intent to distribute is the intent to distribute that thousand grams that you possess in one thousand gram transaction. At that point, I think we're starting to get too much into a kind of specific intent to take a particular action. And while I understand his argument to the extent that he's saying, well, this is how you're going to make sure that you get the largest dealers out there. I think the danger is that you're going to miss a lot of those dealers. You could have someone who is possessing 10 kilograms. But if they intended to intend to distribute it amongst 20 different individuals, none of those individual intents might be for that one. If you have 10 kilos and for whatever decision you make, whatever reason you make a decision to sell it. And even if you want to sell it in dime bags, I don't know why that would negate the intent to sell 10 kilos just because you whack it up into these very, very small individual transactions. And that's my point. The intent is to deal in the entire for this case's purposes. The intent would be to deal in the entire one thousand grams. And you don't you don't you shouldn't have to. And you shouldn't. Let's let's start with the obvious, though. I don't know that it's been argued anywhere. There's absolutely nothing within the language of the statute that would suggest that we have to look at it in the manner. Correct. Correct. And there's there's no language that I mean, there is the knowing or intentionally and intentionally can sometimes look at specific intent as opposed to general intent. But there is the knowing. And so that would be the position of the United States. If you possess a thousand grams and you intend to distribute it, whether it's all at once or whether it's over the course of 200 different transactions at five grams a pop or four thousand or forty thousand. I think it would be at the typical heroin dosage of one quarter of a gram. Then you have possessed with intent to distribute one thousand grams. I misunderstood. I did not think he was saying something different than that. Maybe I misunderstood. But I didn't think that was. But we only chatted about it a little bit beforehand. And then and then he raised it here. So I think we're all kind of working with some some shifting ground now, taking the government's position as to how you establish possession with intent of a thousand grams. We do think that the evidence was sufficient in this case. Taking the testimony of William Pierce and special agents. Describe your evidence with particularity that was presented with respect to that one occasion when Mr. Pierce saw what he believed was a quantity of packaged drugs. What is the best case for the government that we can infer from that evidence that was presented? Sure. And it would involve an inference because admittedly there was no direct evidence by any witness saying I saw or that he had a thousand that Mr. Rowe had a thousand grams. Nor do we even know, given the condition of the verdict slip, that that the jury came to that conclusion. That is that we were up to or over one kilo with respect to that. Correct. Discreet transaction. Correct. But but how do we get to that inference? Well, you take William Pierce's testimony that he has over the course of four months dealing one to two times a week with Mr. Rowe, buying in amounts anywhere from an intended 28 grams, which was that he was actually going 21 up to around 200 grams on multiple occasions. You also have him saying that he saw Mr. Rowe carrying with him a bag that contained other packages packaged the same way with the same writing on it that appeared to be in amounts from 50 to 75 to 100 grams. Six to eight of those packages marked as such. Correct. And and, you know, we we can assume or infer from the fact that he was explained that maybe he was short of that seven grams on that first transaction because Rowe confused it with another package. But they all do contain heroin. So you have you have those amounts and you have that testimony from William Pierce. Then we have expert testimony from Special Agent Shufflebottom who. But how do you quantify that? That amount? I mean, if if the packages that he saw vary in terms of how they're marked for weight, let's say he said six. He testified six to eight packages. Correct. Fifty, seventy five and a hundred. What if they were 650 gram packages? Then you have you have 300 grams there. And if you take the top end that William Pierce testified to getting around 200 grams, you are admittedly only at 500 grams. And that's why I talk about inferences and why you also have to look at Special Agent Shufflebottom's testimony as an expert on drug trafficking, where he talks about in his experience. When you have someone who is dealing in 200 or he actually goes as low as 100 in his testimony, 100 to 200 gram amounts. That means they have access to kilogram, multi kilogram amounts to sell. And he does finish off by saying access to sell. But Mr. Goldberg argues that there's a difference between access and possession. How do you respond to that? There can be depending on the way that Special Agent Shufflebottom meant access. Access can absolutely mean you have it back at the house, which is certainly under your control. What does a record in this case show? What evidence did the jury have before it that it could have found that there was sufficient of it that we could find that a rational juror could find that there was sufficient evidence to show a thousand? I think the scope and scale of what William Pierce talked about was being dealt at maybe not individual sales to him, but that Mr. Goldberg was prepared to engage in. Even if it's only those six packets of 50 grams apiece at the same time that Mr. Pierce is buying, say, another hundred, that's still 400 grams. That is a significant amount. That's double the amount that Special Agent Shufflebottom said is enough to allow one to conclude that this person is operating at a level where he is getting multiple amounts or has access to that. Now, that's looking conservatively. If there's eight packets of 100 grams in that plastic bag on a day that William Pierce sees it while he's picking up 200 grams, well, do the math and you've got your kilogram right there at one time. There was not specific testimony to that understood, and we admit that. But from the scope and extent, and Special Agent Shufflebottom also talked about the way drug trafficking works, and what we have with Mr. Rowe is not necessarily the very top of the top. But at some point, the jury is drawing inference upon inference upon inference, aren't they? I mean, with respect to this occasion when Pierce makes his own purchase and sees what he can only approximate as six to eight packages of 50, 75, and 100, it's direct evidence that he sees these things, whatever they are. But the jury, of course, has to draw the inference as to how many based upon the range of his testimony. There's no direct testimony of a specific amount, a specific number of packages. The jury has to draw the inference as to how many of those packages are weighted in a particular way to get you to an amount. It also has to draw the inference that it is, in fact, heroin-based, right? Sure. Sure. They're taking that particular trail and not just looking at, you know, Pierce says, I bought 200 grams from him, and Special Agent Shufflebottom says, if you're dealing in 200 grams, you're getting more, you have access to greater amounts to sell. That would be a single inference there. But taking the path that you're setting forth, yes, there would be some multiple inferences, but that's the job of the jury. Well, I know, but our job is to apply a standard of review of sufficiency, and while it's not entirely elastic, it's also not a principle that is entirely fixed and requires us to look at an entire record and determine what's reasonable for a jury to infer. How far can they go? Right. What's your response on the sentencing question? How much, you know, are you limited to trying to prove that there are three kilograms? The response that I put in the brief in my response would be the same here. DICLR does stand for the general proposition that the government is not allowed a second bite at the apple unless there are other circumstances. Now, I'm not prepared here to explain any circumstances as to why it is that 10 kilos wasn't proven. I am in a position, having gone through to try and add up the amounts that were introduced at trial as part of the logbook and the testimony on how that ledger was interpreted by Special Agent Shufflebottom, that north of three kilograms would certainly be possible based on the evidence that is before the court. And so our argument would be that that evidence has been put before the court, and while it may not have been elaborated on in any greater detail at sentencing, it is part of the record that the judge could rely upon. So I think that looking at whether a district court is going to look at any extenuating circumstances for why evidence of 10 kilos wasn't put into the record at sentencing, that's a different issue from how much is already in the record and could be looked at even on a resentencing. Okay. Thank you very much. Thank you very much. We appreciate your argument and your candor. But just for everyone's benefit, the testimony of Pierce that we're talking about is on page 169 of the appendix. And he does provide a range based on his recollection of what he observed of six to 10 bags. What I was referring to, I've read the testimony. Exactly. And he talks about the quantity contained in each bag is marked, and the markings vary. And they might be in amounts as low as 50 or as much as 90. So if we apply, I can't imagine that we wouldn't apply to this kind of record, the same rule that we apply at sentencing when there's a range and where there's a lower burden of proof. Where there's a range, the court assumes the low end of each range for purposes of calculation. I don't know why, for sufficiency purposes, a jury wouldn't have any rational basis to infer the high end of any range. It would be speculating. And while the jury is allowed to draw inferences, we don't want to let that drift off into speculation. In the context of a higher burden of proof. Yeah, and particularly a higher burden of proof. Exactly. And the principle of piling inference upon inference that Your Honor mentioned. In terms of construing the statute back to the question that Judge McKee raised, I did contend that the construction of this ambiguous statute, most favorable to the defense, would be to impute the required quantity both to the amount possessed and to the amount intended to be distributed. That would be the most favorable. And there is language in the Supreme Court cases saying that in case of direct irresolvable ambiguity, you do choose the construction most favorable for the defense. So possession of a thousand with intent to distribute a thousand on one occasion would be the construction most favorable. But there are a range of alternate reasonable constructions, which none of which is what was used at this trial. I have to follow up on a reference you just made. You refer to this ambiguous statute. Yeah, but you didn't argue ambiguity in your brief. I mean, I don't want to ignore something. I thought we were facing strictly an insufficiency issue. Insufficiency is always tied to a correct understanding of what the statute means. That's different, obviously, from ambiguity, as you well know. Ambiguity is not the issue. Ambiguity is a fact. That's all I wanted to make clear. Ambiguity is a fact about this statute, which leads us to the task of statutory construction, which we have to undertake in order to ascertain sufficiency or duplicity. That's all I'm saying. And if I'm not mistaken, I think. I heard my friend was certainly concede also on the final point that they don't get to present new evidence of quantity, but only new arguments from the existing evidence, in which case that's right. But you said we've got to push. I don't have. And I don't have any problem with that. We'll have a transcript of the argument to refer to. Thank you very much, Mr. Goldberger. Thank you, Mr. Rudy. We will take the matter under advisement.